



## MEMORANDUM OPINION

No. 04-09-00393-CR

Wilfredo **CASILLAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-0910
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  August 25, 2010

AFFIRMED

Wilfredo Casillas was convicted of three counts of aggravated sexual assault of a child and was sentenced to thirty-six years of imprisonment on each count. On appeal, Casillas argues (1) the evidence was legally and factually insufficient to support Count III of the indictment; (2) the testimony of a sexual assault nurse violated his right to confrontation under the Constitution; and (3) the testimony of a counselor was a direct comment on the truthfulness of the complainant's testimony. We affirm the trial court's judgments.

**LEGAL AND FACTUAL SUFFICIENCY**

In a legal sufficiency review, we view the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App. 2005). In a factual sufficiency review, we view all the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Id.* at 730-31.

Count III of the indictment charged Casillas with causing the penetration of the anus of M.C., his stepdaughter, with his sexual organ. Casillas argues M.C.'s testimony was legally insufficient to support this count because M.C. did not testify that Casillas's penis "penetrated" her anus. We disagree.

A person commits the offense of aggravated sexual assault if he intentionally or knowingly caused the "penetration" of the anus or sexual organ of a child younger than fourteen years of age by any means. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp. 2009). "Although penetration must be proved beyond a reasonable doubt[,] it does not have to be of any particular depth." *Johnson v. State*, 449 S.W.2d 65, 68 (Tex. Crim. App. 1969); *see In re H.R.A.*, 790 S.W.2d 102, 104 (Tex. App.—Beaumont 1990, no writ) (quoting *Johnson*). "Any penetration, no matter how slight, is sufficient to satisfy the requirements" of the aggravated sexual assault statute. *Johnson*, 449 S.W.2d at 68; *see also Vernon v. State*, 841 S.W.2d 407, 408-10 (Tex. Crim. App. 1992).

M.C., who was twelve years of age at the time of the assaults, testified that Casillas sexually assaulted her on multiple occasions when her mother was not at home. According to

M.C., Casillas's pattern was to grab a kitchen knife, threaten to kill her if she did not comply with his attack, and threaten to kill her mother and her sister if she told anyone. During most of these assaults, M.C. testified Casillas penetrated her vagina with his penis. However, on one occasion, M.C. testified that Casillas touched her anus with his penis:

> Q: Okay. Now, can you tell the jury about any of the other incidents where [Casillas] did other things, other than what you've mentioned?
>
> A: Yeah. . . . [T]his time, it was different because he told me to turn around.
>
> Q: Okay. So what happened?
>
> A: I just feel it wet. But I don't know what it is. But, he's grabbing me. He's grabbing my hands back. He's holding them back.
>
> Q: Okay. So you're on – where are you in the house this time?
>
> A: My mom's room.
>
> Q: Okay. And you said he told you to turn around; is that correct?
>
> A: Yeah, he turns me around.
>
> Q: So, how is your body at that time?
>
> A: Like I'm turned around.
>
> Q: Okay.
>
> A: And, he's like in back of me.
>
> Q: Where are your hands?
>
> A: Like he's holding them back.
>
> Q: He's holding your hands?
>
> A: He's holding my hands back.
>
> Q: And then what did you feel?

A: I felt wet. But, I mean . . .

Q: You felt wet?

A: Yeah. I felt wet.

Q: Where?

A: Butt. And then all over, and my vagina, too.

Q: Okay. Did you feel anything on your butt? Did you feel something when he was back there?

A: Yes.

Q: What did you feel?

A: I felt that because it couldn't be his hands either. He was holding my hands. So, I guess his penis.

Q: And what did you feel his penis doing?

A: He was trying to put it in or something, but it didn't – I was fighting. I was still fighting, so I turned myself around again and . . .

Q: Okay. So you felt – you said [that] you thought [it] was [his] penis on your butt?

A: Uh-huh.

Q: And what was he doing when you felt it? Please describe for the jury what it was that you felt.

A: I don't remember because I was fighting him. I wouldn't let him do anything.

Q: Okay. But how – how was it that you could tell that there was something going on there?

A: It was wet. And he – it couldn't be his hands either.

Q: Okay did you feel anything else other than wet on your butt when you felt like he was behind you?

A: I wasn't paying attention.

Q: Okay. All right. Now, do you know whether or not there was any penetration at that time of your butt?

A: He would touch it.

Q: Okay.

A: But I don't remember it going in.

Q: Okay. Did you feel any sensation –

A: No.

Q: – on your butt that you recall?

A: It would hurt a little bit, but, no.

Q: It hurt a little bit, but nothing else other than that?

A: Uh-huh.

Q: And it was wet?

A: Uh-huh.

Q: And you said that you were fighting him at that time?

A: (moves head up and down)

Q: What happened next?

A: He just gets mad, and he goes out of the room.

On cross-examination, Casillas's attorney questioned M.C. about Casillas allegedly touching her anus:

Q: Are you telling this jury that [Casillas] penetrated your anus, or [are you] saying that he never did?

A: I felt it touching, but I – it didn't go in.

Q: Okay. So you're telling this jury that he never penetrated your butt, right?

A:  Well, *it was hurting, and I felt a little bit. But, not all the way in, because I didn't feel it go all the way in*.

Q:  Well, [M.C.], you said several different things. You said that he didn't penetrate you, that he touched you, that he didn't go in.

A:  No. I didn't say he touched me. Because I felt that – I know it was.

Q:  Okay. Did you feel –

A:  It was wet, too.

Q:  Did you feel a lot of pain when his penis touch[ed] – was it his penis that was touching your backside?

A: Uh-huh.

Q:  Okay. And did you feel a lot of pain when his penis touched your anus?

A:  *A little bit.*

(emphasis added).

Casillas argues M.C.'s testimony proved only that his penis made contact with the outside of her anus and not that his penis penetrated her anus. We disagree. M.C. testified that although Casillas's penis did not "go all the way" inside her anus, she did feel his penis "a little bit" on her anus and that his penis caused her "a little bit" of pain. In addition to M.C.'s testimony, there was medical evidence that at the time M.C. outcried, she had an anal fissure, or a tear in the anus. Cynthia Garcia, a nurse, testified that this anal fissure was a "nonspecific" injury. That is, it could have been caused by sexual abuse, or it could have been caused by a hard bowel movement. We hold that the evidence was legally sufficient to show that Casillas's sexual organ penetrated M.C.'s anus. *See Johnson*, 449 S.W.2d at 68 (explaining that "[a]ny penetration, *no matter how slight*, is sufficient to satisfy the requirements" of the aggravated sexual assault statute) (emphasis added). And, with regard to factual sufficiency, Casillas attacks

M.C.'s credibility. However, such credibility questions are the province of the jury. *See Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). We, therefore, hold the evidence was also factually sufficient.

### RIGHT TO CONFRONTATION

Casillas next argues that his constitutional right to confront witnesses was violated when the trial court admitted into evidence a medical report prepared by Dr. James Anderst, who did not appear as a witness, and permitted Sexual Assault Nurse Examiner Cynthia Ann Garcia to testify about Dr. Anderst's report. We disagree.

In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the Supreme Court held that the admission of testimonial hearsay violates the Confrontation Clause unless the declarant is shown to be unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. Statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). "Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo*." *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). "This is particularly so because the legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant." *Id.* at 742-43. "On that question trial judges are no better equipped than are appellate judges, and the ruling itself does not depend upon demeanor, credibility, or other criteria peculiar to personal observation." *Id.* at 743.

It is undisputed that Casillas did not have a prior opportunity to cross-examine Dr. Anderst. Therefore, whether Casillas's right to confrontation was violated turns on whether the report prepared by Dr. Anderst was "testimonial." In *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2533 n.2 (2009), the Supreme Court noted that medical records, created for treatment purposes, are not "testimonial" within the meaning of *Crawford*. Thus, we must look to the record to determine whether the report prepared by Dr. Anderst was created for treatment purposes.

M.C. was first examined by Dr. James Anderst on May 1, 2007. Nurse Garcia, a registered nurse at Santa Rosa Hospital and a licensed Sexual Assault Nurse Examiner, performed the follow-up examination on May 14, 2007. Because Dr. Anderst was not available to testify at trial, Nurse Garcia testified about M.C.'s initial examination.[1] Nurse Garcia identified the medical records relating to the initial examination and explained the steps taken during such an examination. Nurse Garcia explained that Dr. Anderst first took a history. According to Nurse Garcia, a history is taken for purposes of treatment and diagnosis:

> The main purpose of obtaining a history is for the purposes of treatment and diagnosis. So we know how to treat them and diagnose them, we have to know what happened. It's almost like when you walk into a doctor's office and tell them, "I have a headache." Based on what you're telling them, then they know how to treat you or how to diagnose you. So, it's pretty much the same concept.

Second, a head-to-toe examination of the patient is performed. Then, an examination of the genitals using a colposcope is performed. After explaining the procedure followed for an examination, Nurse Garcia read some of the history from the medical record prepared by Dr. Anderst. She then explained that according to Dr. Anderst's report, Dr. Anderst was "unable to

---

[1] These medical records were admitted in evidence over Casillas's objection that their admittance violated his right to confront Dr. Anderst.

visualize hymenal edges" and that his examination findings were "normal." Casillas claims this testimony violates his right to confront Dr. Anderst.

Recently, this court, under similar facts, held that a defendant's right to confrontation was not violated when the trial court (1) admitted into evidence a medical report prepared by a sexual assault nurse examiner who did not appear as a witness, and (2) permitted another sexual assault nurse examiner to testify about the former's report. *See Berkley v. State*, 298 S.W.3d 712, 714-15 (Tex. App.—San Antonio 2009, pet. ref'd). This court explained that "[b]ecause there was evidence before the [trial] court that the purpose of the report was to render medical treatment to the complainant, and this evidence went unchallenged, we hold the trial court did not err in admitting the nurse's report of the examination." *Id.* at 715. Likewise, here, Nurse Garcia testified that the purpose of the report was to render medical treatment, and her testimony went unchallenged. On appeal, Casillas argues that the report, on its face, shows that it was not created for the purpose of medical diagnosis or treatment because it does not contain a diagnosis, but instead states that the exam was normal. However, whether the exam's findings are normal or abnormal is not the issue; the issue is whether the report was generated *for the purpose of diagnosing or treating* M.C. Nurse Garcia clearly testified the report was created for such purposes.

### COMMENTING ON THE TRUTHFULNESS OF THE COMPLAINANT'S TESTIMONY

In his final issue, Casillas argues the trial court erred when it overruled Casillas's "objection to the testimony of Marianna Torres, the complainant's counselor, because the testimony was a direct comment on the truthfulness of the complainant's testimony." We review a trial court's evidentiary rulings for abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

At trial, Marianna Torres, a licensed master social worker, testified that she had eleven sessions with M.C. and observed M.C. exhibit symptoms that are consistent with children who have been sexually abused. Torres, however, did not make a diagnosis of child abuse. This court has previously held that such testimony is not a comment on the truthfulness of the complainant. *See Rivas v. State*, No. 04-06-00375-CR, 2009 WL 1956383, at *4 (Tex. App.—San Antonio 2009, pet. ref'd) (holding that expert who did not make a diagnosis of sexual abuse, but merely testified that finding of normal examination was consistent with history of sexual abuse provided by complainant was not a direct comment on truthfulness of complainant); *see also Oliver v. State*, 32 S.W.3d 300, 303 (Tex. App.—San Antonio 2000, pet. ref'd) ("While an expert may not testify that a person's recitation of events is or is not the product of fantasy or manipulation because such evidence is, in effect, particularized testimony concerning the person's credibility, an expert may, nevertheless, testify about both the common traits/symptoms of child sexual abuse syndrome and whether the victim exhibits these traits."). Torres never testified directly about M.C.'s credibility or honesty. *See Rivas*, 2009 WL 1956383, at *4; *Uribes v. State*, No. 04-07-00774-CR, 2009 WL 330972, at *1 (Tex. App.—San Antonio 2009, no pet.).

Casillas also points to Torres's testimony that Torres became worried, as the sessions progressed, that M.C. was depressed and becoming suicidal. In his brief, Casillas argues that this testimony commented on the truthfulness of M.C. because it was unnecessary and did not assist the jury:

> [T]he essence of [Torres's] testimony was that M.C. was very sad and felt worse as the sessions progressed, that Ms. Torres, who was not able to diagnose and prescribe medications, felt the necessity to refer M.C. to a doctor who could diagnose and prescribe medications. This testimony could not have assisted the jury in any rational way. After all, M.C. had already testified to the same thing, and had even told the jury that she quit counseling because she felt like she was crazy. Given this, the jury did not need an

> expert to tell it that this child appeared to be depressed and should have seen a doctor who could make a formal diagnosis and, if necessary, prescribe appropriate medications.

It is unclear how this argument relates to Torres commenting on the truthfulness of M.C. Instead, it appears Casillas is arguing that Torres's testimony was inadmissible under Texas Rule of Evidence 702 because it did not assist the jury in any rational way. Such an issue, however, was not preserved for appellate review.

At trial, Casillas objected to Torres's testimony, arguing that it was hearsay, that it was cumulative, that it went "to the truth and credibility of the victim," and that it was an attempt to "bootstrap" the victim's behavior after the alleged abuse to support her credibility. However, Casillas did not object to Torres's testimony on the ground it would not assist the jury under Rule 702. Because Casillas's appellate issue does not comport with his trial objections, Casillas's issue is not properly preserved for appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) ("An objection stating one legal basis may not be used to support a different legal theory on appeal."); *Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (quoting *Rezac*).

We note that Casillas argues he has preserved this issue and, in support, quotes the following language from *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997): "Expert testimony does not assist the jury if it constitutes 'a direct opinion on the truthfulness' of a child complainant's allegations." Thus, Casillas believes that because he objected to Torres's testimony on the grounds it constituted a direct comment on the truthfulness of the complainant, he also preserved any grounds related to whether expert testimony assists the jury in any rational way. However, Casillas misreads *Schutz*. According to *Schutz*, an expert directly giving an opinion on the truthfulness of a child complainant's allegations does not assist the jury.

However, the reverse is not necessarily true: testimony that does not assist the jury may or may not be a testimony that directly comments on the truthfulness of a child complainant's allegations. Arguing that testimony should be excluded because it comments on the truthfulness of the complainant's testimony is different from arguing that expert testimony does not assist the jury in any rational way.

### CONCLUSION

We affirm the judgments of the trial court.

Karen Angelini, Justice

Publish